Edward Rubacha  (AZ Bar No. 011689)
E-mail:  ER@JHKMlaw.com
**JENNINGS HAUG KELEHER MCLEOD LLP**
2800 N. Central Avenue, Suite 1800
Phoenix, AZ  85004-1049
Telephone: 602-234-7800
Facsimile:  602-277-5595
Court Documents:  docket@jhkmlaw.com

Attorneys for The Guaranty Company of North America USA

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| The Guarantee Company of North America USA, a Michigan corporation,<br><br>Plaintiff,<br><br>vs.<br><br>Kinkaid Civil Construction, LLC, an Arizona limited liability company; Tyson K. Borum and Jeffrie A. Borum, husband and wife, and as Trustees of the Tyson K. Borum And Jeffrie Borum Revocable Trust Dated 8/4/2005,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT** |

For its Complaint against defendants, The Guarantee Company of North America USA (hereafter "GCNA") alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1332(a)(l) because there is (a) complete diversity of citizenship between the parties, Plaintiff GCNA, a citizen of State of Michigan and Defendants are all citizens of Arizona and (b) the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), (2) because the individual Defendants, who also are the trustees of the defendant trust,

reside in the State of Arizona, the limited liability company defendant is organized in Arizona, its members are citizens of the State of Arizona, has its principal place of business in Arizona, and conducts business in the State of Arizona.

## PARTIES

3.     Plaintiff GCNA is and was at all times mentioned herein a corporation duly organized and existing under the laws of the State of Michigan, with its principal place of business located in Southfield, Michigan.

4.     Defendants Tyson K. Borum and Jeffrie A. Borum (the "Borums") are residents of Arizona, are husband and wife, and are the trustees of the defendant trust.  All acts alleged herein were for the benefit of and on behalf of the community.

5.     Defendant Kinkaid Civil Construction, LLC ("KCC") is a limited liability company organized under the law of Arizona, has its principal place of business in Arizona, conducts business in the State of Arizona, and its members are all residents of Arizona.

6.     Defendant Tyson K. Borum And Jeffrie Borum Revocable Trust Dated 8/4/2005 ("Trust") was formed in, its assets are located in and the trustees thereof are residents of Arizona.

## GENERAL ALLEGATIONS

7.     On or about August 25, 2015, KCC and the Borums, individually and on behalf of their trust, to convince GCNA to issue bonding for their company, KCC, signed a General Indemnity Agreement ("GIA") in favor of GCNA, a true and correct copy of which is attached as Exhibit "A."

8.     In the GIA, Defendants, and each of them, as indemnitors of GCNA, agreed, to pay GCNA on demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, attorney fees (whether Surety at its sole option elects to employ its own attorney, or permits or requires Indemnitors to make arrangements for Surety's legal representation), in-house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of:

a. Surety having executed, provided or procured any Bond;

b. any Default under this Agreement by any of the Indemnitors;

c. Surety enforcing any of the covenants or conditions of this Agreement;

d. Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or

e. Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangements for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;

(GIA, Exhibit A hereto)

9.      Defendants, as indemnitors, also agreed in the GIA that if claims were asserted against GCNA:

1. ***Surety shall have the exclusive right for itself and the Indemnitors to determine in its sole and absolute discretion whether any claim or suit upon any bond shall, on the basis of belief of liability, expediency or otherwise, be paid, compromised, defended or appealed.***

2. Surety may incur such expenses, including attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims and completion of any Contract with respect to which Surety has issued any Bond.

3. ***In the event of any payment of any kind by the Surety, the Indemnitors further agree that the liability of the Indemnitors shall extend to and include, and the Surety shall be entitled to charge and recover for, any and all disbursements made by it in good faith under the belief that:***

a. any Principal or Indemnitor is or has been in default under or pursuant to this Agreement;

b. ***the Surety was or might be liable to pay the claims asserted or the sums paid, whether or not such liability actually existed; or***

c. ***such payments were or are necessary or expedient, in the Surety's sole and absolute discretion, to protect any of the Surety's rights or interests or to avoid or lessen the Surety's liability or alleged liability, whether or not such liability, necessity or expediency actually existed***.

(*Id.;* emphasis supplied)

10.      Defendants also agreed in the GIA that "[a]n itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to Surety in any claim or suit by Surety against Indemnitors." (Exhibit A)

11.     Finally, Defendants waived any right to a jury in the GIA. (Ex. A, p. 5)

12.     In specific reliance on the terms of the GIA, and the promises of Defendants therein, GCNA issued a number of bonds on behalf of KCC.

13.     In late 2018 and throughout 2019, numerous claims were asserted by obligees on performance bonds and unpaid subcontractors and suppliers to KCC on payment bonds, all bond issued by GCNA on behalf of KCC.

14.     Litigation ensued on a number of these claims, requiring GCNA to retain attorneys to investigate and, in certain cases, to defend itself, thereby incurring attorney fees and consultant fees, the responsibility for which is owed by Defendants to GCNA under the terms of the GIA.

15.     Additionally, besides the attorney fees for which Defendants are responsible, KCC entered into a public works contract with the City of Havre, MT (the "Project"), which contract required a performance bond and a payment bond issued on behalf of KCC naming the City of Havre as obligee on the bonds.

16.     At KCC's request, and in reliance on the terms of the GIA and Defendants' express promises therein, GCNA issued the required bonds, Bond No. 70112378, in the penal sum of $1,972,503.

17.     In late November, 2016, City of Havre asserted KCC defaulted in its performance on the Project and declared KCC to be in default.

18.     At a point in mid-December, 2016, KCC demobilized, left the site and did not return to complete its work on the Project.

19.     Subsequently, KCC demanded arbitration pursuant to the terms of the contract with City of Havre and the arbitration hearing was conducted on May 24 and 25, 2018.

20.     On July 23, 2018, the appointed arbitrator issued his award, which award found "Kincaid's action is a material, substantial breach of the Contract. It's (sic) leaving the site and failure to agree to the City's proposed Change Order No. 4 constitutes an abandonment of the project."

21.     Given the findings by the arbitrator, by letter dated August 14, 2018, City of Havre made demand on GCNA under the performance bond noting "Time is of the essence in this matter. The best opportunity to correct the failures of Kinkaid are during the window of time between now and the end of the fall of this year. As such, your attention to this matter needs to be of the highest priority."

22.     In response to that demand, GCNA conducted an investigation as to completion of the City of Havre project under the performance bond issued on behalf of KCC for the Project.

23.     GCNA attempted to determine the remaining contract balance and to determine if Kinkaid could be utilized to complete the Project under the Bond.

24.     City of Havre refused to allow KCC to have any further involvement on the Project.

25.     Defendant Ty Borum recommended that GCNA contact a local contractor that also had submitted a bid originally on the Project, Lakeside Excavation ("Lakeside"), as a preferred completion contractor and provided Lakeside's contact information to GCNA.

26.     GCNA contacted Lakeside for its estimated cost to complete KCC's scope on the Project and, pursuant to the options available under the performance bond, determined the cost to complete exceeded the remaining contract balance by $208,187.77.

27.     City of Havre disagreed claiming numerous damage elements, including defective work performed by KCC, additional damages due to uncompleted work, and amounts based on its interpretations of the contract terms.

28.     Pursuant to the terms of the performance bond, by letter dated January 31, 2019, GCNA tendered a check payable to the City of Havre for $208,187.77.  A true and correct copy of the check is attached as Exhibit "B."

29.     Subsequently, City of Havre and GCNA continued negotiations as the Project was completed by Lakeside, ultimately agreeing to a mediation--after the

Project was completed--in an attempt to resolve the disputed damages claimed by City of Havre over and above the $208,187.77 tendered by GCNA to City of Havre.

30.     The mediation was unsuccessful with City of Havre claiming damages in excess of $250,000 in addition to the $208,187.77 already paid by GCNA.

31.     City of Havre filed a complaint against GCNA for declaratory relief and for: "2. A determination of the amount the City is entitled to under the Performance Bond;" "5. For a finding Guarantee is in breach of both bonds and engaged in unfair trade practices;" and "6. For all damages suffered by the City as a result of Guarantee's conduct; . . . ." ("*City of Havre v. The Guarantee Company of North America USA*, Montana Twelfth Judicial District Court, Hill County, Cause No. DV-20-072)

<u>**COUNT ONE**</u>

**(Breach of Contract for Amount Paid Under the Havre Performance Bond)**

32.     GCNA incorporates in Count One each and every allegation set forth above as if fully set forth herein.

33.     By the arbitration award, KCC was found to have materially breached the contract bonded by GCNA and to have abandoned the Project.

34.     As a result of a claim asserted against the performance bond issued to the City of Havre, which claim was based on KCC's material breach and abandonment of the Project, GCNA, in a good faith belief that it was or might be liable to pay the claims asserted, and that such payment was necessary or expedient to protect GCNA's rights and interests and to avoid or lessen GCNA's liability or alleged liability, paid City of Havre $208,187.77.

35.     Under the express terms of the GIA, Defendants, jointly and severally, are liable to GCNA for the amount paid by GCNA of $208,187.77.

36.     Demand has been made on Indemnitors and each of them but they have refused to pay the amount owed under the express terms of the GIA of $208,187.77.

37.     If City of Havre is successful in its lawsuit against GCNA, GCNA may be liable for additional amounts, for which Defendants would be liable to GCNA.

## COUNT TWO

### (Breach of Contract For Attorney Fees and Costs)

38.     GCNA incorporates into Count Two each and every allegation set forth above as if fully set forth herein.

39.     As a result of claims asserted against the bonds issued by GCNA on behalf of KCC and litigation naming GCNA as a defendant, GCNA retained a consultant and attorneys to investigate the claims and defend the actions.

40.     Under the express terms of the GIA, Defendants are liable to GCNA for attorney fees and consultant fees paid by GCNA in the total amount of $52,152.67.

41.     Additionally, GCNA has paid additional costs and a mediator's fee in the total amount of $5,126.75.

42.     Demand has been made on Defendants but they have refused to pay the amount owed under the express terms of the GIA of $57,279.42.

WHEREFORE, GCNA prays for judgment against Defendants and each of them, jointly and severally, as follows:

A.     For the amount of $265,467.19;

B.     For GCNA's costs and reasonable attorney's fees pursuant to the terms of the GIA and A.R.S. §§ 12-341, 341.01;

C.     For prejudgment interest on all payments at ten percent (10%) per annum from the date paid to the date hereof in the amount of $62,453.32;

D.     For interest at the legal rate at the time of judgment on the principal amount, costs and attorney fees awarded until paid; and

E.     For such other and further relief as the Court deems just and proper.

DATED this 14th day of January, 2022.

JENNINGS HAUG KELEHER McLEOD

By _____
Edward Rubacha
Attorneys for Plaintiff

7